Reversed and Remanded and Majority and Dissenting Opinions filed January
29, 2008








Reversed and Remanded and Majority and Dissenting
Opinions filed January 29, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00078-CV

_______________

 

MARK A. CANTU, Appellant

 

V.

 

HOWARD S. GROSSMAN, P.A., Appellee

                                                                                                                                               


On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 05-64630

                                                                                                                                               


 

M A J O R
I T Y  O P I N I O N








In this case, we are asked to
consider for the first time whether the filing of a foreign judgment is subject
to our state=s venue statutes.  Appellee Howard S. Grossman, P.A. obtained a Florida
judgment against appellant Mark A. Cantu and filed the judgment in  Harris
County.  Cantu moved to transfer venue to Hidalgo County, where he resides and
maintains his business and property.  After considering the purpose of the Uniform
Enforcement of Foreign Judgments Act and the interpretation of similar statutes
by other states, we conclude that the general venue statute applies.  We
therefore reverse and remand with instructions to transfer the cause to a court
of competent jurisdiction in  Hidalgo County, and we do not reach Cantu=s remaining issue.

 

 

I. 
Procedural Background

Grossman sued Cantu in Florida for
tortious interference with contract. After the Florida trial court struck Cantu=s defensive pleadings as a discovery
sanction, Grossman obtained a final summary judgment in the amount of $833,000
plus prejudgment interest of $516,665, for a total of $1,349,665.  Cantu
appealed.  On an extensive record and after full briefing by both parties, a
Florida court of appeals affirmed the final summary judgment.  Grossman also
obtained a final judgment for attorneys= fees and costs in the amount of
$25,530.[1] 

Pursuant to the Uniform Enforcement
of Foreign Judgments Act (AUEFJA@), Grossman filed the two Florida judgments in the 215th
District Court for Harris County, Texas.[2] 
In response, Cantu filed a AMotion to Transfer Venue, and, Subject Thereto, Motion for
New Trial, Alternatively, Motion for Denial of Recognition of Foreign Judgment.@  The trial court denied Cantu=s Motion to Transfer Venue and his
Motion for New Trial and Alternative Motion for Denial of Recognition of
Foreign State Judgment.[3]  Cantu
appealed.  In two issues, he challenges the trial court=s denial of both motions.  Due to our
disposition of the venue question, we do not reach Cantu=s remaining issue.

II. 
Standard of Review








In his first issue, Cantu argues the trial
court erred in denying his motion to transfer venue to Hidalgo County.  When
reviewing the denial of a motion to transfer venue, we consider the entire
record.  Tex. Civ. Prac. & Rem. Code Ann. ' 15.064(b) (Vernon 2002).  Relying on
Texas=s general venue provision, Cantu
contends venue is proper only in Hidalgo County, the county of his residence.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a)(2) (Vernon 2002)
(providing all lawsuits shall be brought, inter alia, in county of
defendant=s residence).  Grossman responds that under the UEFJA, venue is proper in
any county, including Harris County.  See Tex. Civ. Prac. & Rem.
Code Ann. ' 35.003(a) (Vernon 1997) (providing copy of foreign judgment Amay be filed in the office of the
clerk of any court of competent jurisdiction of this state@).

III.  Analysis

 A.       Venue
Challenge

Venue concerns the geographic
location within the forum where the case may be tried. See, e.g., Boyle
v. State, 820 S.W.2d 122, 139B40 (Tex. Crim. App.1989) (en banc); see
also Gordon v. Jones, 196 S.W.3d 376, 383 (Tex. App.CHouston [1st Dist.] 2006, no pet.) (AVenue may and generally does refer to
a particular county, but may also refer to a particular court.@); Liu v. Cici Enters., LP,
No. 14-05-00827-CV, 2007 WL 43816, at *2 (Tex. App.CHouston [14th Dist.] 2007, no pet.)
(mem. op.) (same).  AGenerally, chapter 15 of the Texas Civil Practice and
Remedies Code governs venue of actions.@  In re Tex. Dept. of Transp.,
218 S.W.3d 74, 76 (Tex. 2007).  The plaintiff has the first choice to fix venue
in a proper county by bringing the action in the county of his choice.  In
re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999).  If a defendant objects
to the plaintiff=s choice through a timely motion to transfer venue, the
plaintiff must prove that venue is proper in the county of suit.  Id.; Wilson
v. Tex. Parks & Wildlife Dept., 886 S.W.2d 259, 260B61 (Tex. 1994).  If the plaintiff
fails to establish proper venue, the trial court must transfer venue to the
county specified in the defendant=s motion to transfer, provided that
the defendant has requested transfer to another county of proper venue.  Masonite,
997 S.W.2d at 197.  On this point, the defendant has the burden to provide
prima facie proof.  Id.

In response to Cantu=s challenge, Grossman asserted that
venue was proper under the following terms of the UEFJA:








(a)       A copy of a foreign judgment authenticated
in accordance with an act of congress or a statute of this state may be filed
in the office of the clerk of any court of competent jurisdiction of this state.[[4]]

(b)       The clerk shall treat the foreign judgment
in the same manner as a judgment of the court in which the foreign judgment is
filed.

(c)       A
filed foreign judgment has the same effect and is subject to the same
procedures, defenses, and proceedings for reopening, vacating, staying,
enforcing, or satisfying a judgment as a judgment of the court in which it is
filed.

Tex. Civ. Prac. & Rem. Code Ann. ' 35.003 (Vernon 1997).  Grossman
offered no additional evidence supporting the venue choice of Harris County but
instead asserts that, under section 35.003, a foreign-judgment creditor may
maintain venue in any Texas court of competent jurisdiction.  Cantu, on
the other hand, argues that this court should follow the reasoning of the
courts of our sister states, conclude that the UEFJA is silent regarding venue,
and apply our general venue statutes.  

Although our dissenting colleague
contends that we should determine whether the general venue statute applies to
the filing of a foreign judgment by focusing on the word Alawsuit@ in the venue statute, we follow the
approach of every other state that has addressed this question, and begin our
analysis with the Uniform Act.

B.        Construction
of the UEFJA








The construction of a statute is a
question of law, which we review de novo.  F.F.P. Operating Partners, L.P.
v. Duenez, 237 S.W.3d 680, 683 (Tex. 2007).  And because the UEFJA is a
uniform act, we must begin our analysis with the Act=s purpose.  Tex. Gov=t Code Ann. ' 311.028 (Vernon 2005) (AA uniform act included in a code
shall be construed to effect its general purpose to make uniform the law of
those states that enact it); see also id. ' 312.005 (AIn interpreting a statute, a court
shall diligently attempt to ascertain legislative intent and shall consider at
all times the old law, the evil, and the remedy.@); Panhandle & S. F. Ry. Co.
v. Friend, 91 S.W.2d 922, 925 (Tex. Civ. App.CAustin 1936, no writ) (interpreting a
statute with language similar to section 311.028, and stating, AThis rule has peculiar application to
procedural statutes . . . to secure to the litigant as simple, prompt, and
expeditious determination of his case as is consistent with fair and impartial
justice, reducing as far as practical to a minimum the delay and expense
incident to reversal and new trial.@).

 Our ultimate goal in construing a
statute is to give effect to the Legislature=s intent as expressed in the language
of the statute.  F.F.P. Operating Partners, L.P., 237 S.W.3d at 683; Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 892 (Tex. 2002).  In doing so, we
must always consider the statute as a whole rather than its isolated provisions. 
Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001) (citing Morrison
v. Chan, 699 S.W.2d 205, 208 (Tex. 1985)).  AWe should not give one provision a
meaning out of harmony or inconsistent with other provisions, although it might
be susceptible to such a construction standing alone.@  Id. (citing Barr v.
Bernhard, 562 S.W.2d 844, 849 (Tex. 1978)).  Instead, we presume that the
both the statute and the legislative act are intended to be effective in their
entirety.  Allegheny Mut. Cas. v. State, 710 S.W.2d 139, 141 (Tex. App.CHouston [14th Dist.] 1986, pet. ref=d).  Thus, in construing a statuteCregardless of whether it is ambiguous
on its faceCwe may consider, among other matters, the object sought to be attained;
the circumstances under which the statute was enacted; common law or former
statutory provisions, including laws on the same or similar subjects; and the
consequences of a particular construction.  See Tex. Gov=t Code Ann. ' 311.023 (Vernon 2005).   

C.        Purpose
of the UEFJA

By examining the rulings of other
states that have enacted various versions of the UEFJA, we can determine that
the Act is








(a)       intended Ato
give the holder of foreign judgment the same rights and remedies as holders of
domestic judgments, and to make foreign judgments just as easy to enforce.@  Redondo Constr. Corp. v. U. S., 157 F.3d
1060, 1065 (6th Cir. 1998).  Thus, the UEFJA is not intended to give a holders
of foreign judgments greater rights than holders of domestic judgments.

 

(b)       Adesigned
merely as a facilitating device and was not intended to alter any substantive
rights of the parties in an action for enforcement of a foreign judgment.@  Me. v. SeKap, S.A. Greek Co-op. Cigarette Mfg.
Co., S.A., 920 A.2d 667, 672 (N.J. Super. Ct. App. Div. 2007).  It is
reasonable, then, to interpret the Act in a manner that does not alter the
substantive rights afforded by Texas venue statutes to Texas defendants.

 

(c)       enacted Ato
facilitate the interstate enforcement of judgments in any jurisdiction where
the judgment debtor is found.@ Hamwi v.
Zollar, 702 N.E.2d 593, 597 (Ill. App. Ct. 1998).  Thus, the UEFJA may be
interpreted in a manner consistent with the general venue statute, under which
venue may be maintained in the county of the defendant=s residence.

 

(d)       created Ato
provide a simpler, more expedient procedure to enforce foreign judgments; it is
not [intended] to endow foreign creditors with substantive rights not otherwise
available in the forum state.@  Abba
Equip., Inc. v. Thomason, 517 S.E.2d 235, 238 (S.C. Ct. App. 1999). 
Consequently, it cannot be interpreted as a Asuper
venue@ statute.

 

(e)       intended
primarily Ato allow a party with a favorable judgment an opportunity to obtain
prompt relief.@  Nationwide Ins. Enter. v. Ibanez, 368 Ark. 432 (2007).  And as
with domestic judgments, this can be accomplished in accordance with Texas
venue statutes. 

After reviewing the purposes of the
UEFJA, we are unpersuaded by Grossman=s argument.  The purposes of the
UEFJA as a uniform act do not require us to read the word Avenue@ into the statute; to the contrary,
the exclusion of venue considerations is actually more consistent with the Act=s purposes.  We therefore agree with
Cantu=s position that  section 35.003 is
silent regarding venue.  See Garland v. Dallas Morning News, 22 S.W.3d
351, 358 (Tex. 2000) (stating courts must take statutes as they find them and
should not give strained readings to statutes).  








This conclusion, which we reach in
accordance with the Texas Code Construction Act,  is consistent with the
results reached by courts in other states with similar UEFJA filing provisions
or interpreting other uniform acts.  See also Chiriboga v. State Farm Mut.
Auto Ins. Co., 96 S.W.3d 673, 678 (Tex. App.CAustin 2003, no pet.) (holding that,
if A[n]one of the mandatory or specific
permissive venue provisions apply[,]@ then the general venue rule
applies). 

1.         Texas Code Construction Act

When interpreting a statute, we A>consider the entire act, its nature
and object, and the consequences that would follow from each construction.=@  Atascosa County v. Atascosa
County Appraisal Dist., 990 S.W.2d 255, 258 (Tex. 1999) (quoting Sharp
v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991)).  In construing
the State=s venue provisions with the UEFJA, we must presume the Legislature
intended both chapters of the Code to be effective and further intended a just
and reasonable result.  See Tex. Gov=t Code Ann. ' 311.021 (2) (3) (Vernon 2005).  The
result we reach today achieves these ends.

Texas law provides more than one
method to present an order or judgment from another state to a Texas court for
enforcement under the full faith and credit provision of the United States
Constitution.  Bryant v. Shields, Britton & Fraser, 390 S.W.2d 836,
841 (Tex. App.CDallas 1996, writ denied) (citing Walnut Equip. Leasing Co. v. Wu,
920 S.W.2d 285, 286 (Tex. 1996)).  A judgment creditor may file the foreign
judgment with the clerk of the court as provided in section 35.003.  Tex. Civ.
Prac. & Rem. Code Ann. ' 35.003 (Vernon 2005). 
Alternatively, the creditor may bring an action to enforce the judgment.  Id.
' 35.008.   These are two routes
to the same end, i.e., that of Texas recognition of the foreign judgment.  And
as we have previously observed, the latter method Ahas the same character as any other
civil proceeding . . . .@  Brown v. Lanier Worldwide, Inc.,
124 S.W.3d 883, 902 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  Consequently, a
defendant may challenge venue in the enforcement action just as in any other
civil proceeding.  See Tex. R. Civ. P.
86.  








It would therefore be inconsistent to
hold that, by electing the procedure set forth in section 35.003, a judgment
creditor could deprive the debtor of the opportunity he would otherwise possess
to challenge the creditor=s choice of venue.  See id.; cf. Fleming v. Ahumada,
193 S.W.3d 704, 712 (Tex. App.CCorpus Christi 2006, no pet.) (AWe will not endorse an interpretation
of section 15.012 that creates a loophole for parties to circumvent the venue
statutes in order to litigate their claims any place they choose.@).  In addition, such an approach
cannot be harmonized with the purposes of the UEFJA we have previously
enumerated, for it would alter the rights of the parties, enlarging the rights
of foreign-judgment creditors beyond the rights of the holders of Texas
judgments.  And finally, such a result would be inconsistent with section
311.028 of the Code Construction Act, which requires us to construe a uniform
act Ato effect its general purpose to make
uniform the law of those states that enact it.@  Tex. Gov=t Code Ann. ' 311.028 (Vernon 2005).  We therefore construe section 35.003
of the UEFJA in a manner that is consistent with section 35.008 of the same
Act, with the venue provisions of the same Code, and with the laws of our
sister states.

2.         Other
States Considering Venue for UEFJA Filings

a.         Oklahoma








In Garrett v. Okla. Panhandle
State Univ., the Oklahoma Court of Civil Appeals held the general venue
statutes applied to Oklahoma=s UEFJA unless, as was found in the case before the court, a
particular venue statute applied.  156 P.3d 48, 51 (Okla. Civ. App. 2006), cert.
denied, BU.S.B, 127 S. Ct. 2980 (2007).  In Garrett, the judgment debtor replied
to the filing of a Texas judgment by filing a motion to transfer venue.  Garrett,
156 P.3d at 49.  The judgment creditor Aresponded that he was not filing a
petition and that venue was not relevant.@  Id. at 50.  As in the
present case, the creditor argued that A[t]he Uniform Enforcement of Foreign
Judgment Act stated he could file his judgment in any county, and he had
followed the procedures set forth.@  The trial court rejected that argument,
granted the motion, and the Oklahoma appellate court affirmed.  In reaching its
conclusions, the Oklahoma court began its analysis with the Uniform Act.  

Oklahoma=s UEFJA is substantively similar to
Texas=s, permitting filing of a foreign
judgment A>in the office of the court clerk of any county of this
state.=@  See id. at 50 n.1 (quoting
Okla. Stat. tit. 12, ' 721 (2001)).  The venue provision in question required an A>action against a public officer for
an act done by him in virtue, or under color of his office, or for neglect of
his official duties=@ to A>be brought in the county where the
cause, or some part thereof arose.=@  See id. at 50 n.2 (quoting
Okla. Stat. tit. 12,  ' 133 (2001)).  Citing Oklahoma=s analog to section 35.003(c), the
court observed, ARegistering a foreign judgment in some cases may bring a
judgment debtor into court for litigation purposes . . . . Consequently, venue
becomes an important legal right that is not embedded in the Act itself.@  Id. at 50 (citing Okla.
Stat. tit. 12,  ' 721 (2001)).  The  court also referred to the Apossible expense and inconvenience
[to the judgment debtor] of challenging an action hundreds of miles from home.@  Id. (citing Ex parte
Wells, 567 So.2d 388 (Ala. Civ. App. 1990)).  This concern is necessarily
of even greater significance in Texas, which is nearly four times the size of
Oklahoma.  We see no reason to conclude that Texas legislators did not share
this concern.

b.         Georgia

Cherwood, Inc. v. Marlin Leasing
Corp. involved a
UEFJA provision virtually identical to section 35.003(a) and a general venue
provision of the Georgia Constitution that establishes venue for Acivil cases.@  601 S.E.2d 356, 357 (Ga. Ct. App.
2004) (quoting Ga. Const. art.
VI, ' 2, & VI. (1983)).  As here, the Georgia
Court of Appeals began with its Uniform Enforcement of Foreign Judgments
statute and rejected an argument similar to Grossman=s argument:








We have characterized the Uniform Act as a Asummary procedure@
for endowing a filed foreign judgment with the same effect as a judgment of the
court in which it is filed.  [The judgment creditor]  argues that the Uniform
Act therefore provides for a procedure for filing and not the commencement of a
civil action subject to the general venue provision. We reject this argument
because a filing under the Uniform Act may become subject to certain civil
proceedings.  For instance, the filing of the foreign judgment may be attacked
by questioning the personal jurisdiction of the foreign court.  Such a
challenge would necessarily be adjudicated in the court where the filing under
the Uniform Act was made, showing the court is more than simply a depository
for recording the foreign judgment.

 

Id. (citations omitted).

The court then held that a filing
under the UEFJA must comply with the general venue requirements of the Georgia
Constitution.  Id.  To rule otherwise, the court concluded,  would allow
forum shopping by plaintiffs and would present defendants wishing to challenge
a foreign judgment with geographical inconveniences not faced by other
defendants.  Id. at 357B58.[5]  Because of
its greater size, the same difficulties are presented in Texas to an even
greater degree. 

c.         Alabama

In Ex parte Wells, the Alabama
Court of Civil Appeals held its general venue provision applied to filing
foreign judgments under the UEFJA.  567 So.2d 388, 390 (Ala. Civ. App. 1990).  
The court began its analysis with its UEFJA, which provides:

[An authenticated copy of any foreign
judgment] may be filed in the office of the clerk of any circuit court of
this state. . . . A judgment so filed has the same effect and is subject to
the same procedures, defenses and proceedings for reopening, vacating, or
staying as a judgment of a circuit court of this state and may be enforced or
satisfied in like manner. . . . .  








Id. at 389B90 (emphasis added).  And the court
concluded, AIn our review, we find that there is no restrictive language in our
uniform act to suggest that the legislature intended that the general venue
statute should not apply.@  Id. at 389.

The Wells court further stated
that permitting venue in a county having no connection to the judgment debtor
would grant such judgments Asuper status@ and  Acould cause a resident defendant, who may not have been
afforded procedural due process in the foreign state, the possible
inconvenience and expense of defending an action hundreds of miles from his/her
county of residence.@  Id. at 389B90.  Here, too, the potential
inconvenience to Texas judgment debtors is magnified by our State=s much greater size.

3.         Other
Uniform Act Interpretations

a.         Florida:
Uniform Foreign-Money Judgments Act

In Society of Lloyd=s v. Sumerel, the federal district court for the
Middle District of Florida related that the foreign-judgment creditor
originally filed in Ohio, and therefore cited Ohio=s version of the Uniform Foreign
Money-Judgments Recognition Act.  No. 2:06-cv-329-TfM-29-DNF, 2007 WL 2114381,
at *4 (M.D. Fla. July 20, 2007).  Because the defendant had relocated to
Florida, venue in Ohio was no longer proper, and the case was transferred to
Florida.  Id.  The Sumerel court held that the statute of
limitations was tolled when the judgment creditor filed the foreign judgment,  Ano matter how >wrong the plaintiff
may have been in filing his case as to venue, whether the court in which it was
filed had personal jurisdiction over the defendants or not.=@  It would similarly seem that a
judgment creditor under the UEFJA could toll limitations governing enforcement
by filing the judgment in any court of competent jurisdiction, regardless of
whether venue is proper in that county or court;  thus, the ability to file the
judgment in Aany@ Texas court of competent jurisdiction is not rendered meaningless simply
because the general venue statutes also apply.

b.         Kansas: Uniform Child-Custody Jurisdiction and
Enforcement Act








In re Rumsey was an attorney discipline
proceeding.  71 P.3d 1150, 1159 (Kan. 2003).  There, the Kansas Supreme Court
stated that the Uniform Child-Custody Jurisdiction and Enforcement Act Aaddresses jurisdiction for Kansas
courts.  It does not address the determination of venue between the state=s district courts.@  Id.  In the case before it,
an attorney told a client that her divorce proceedings would have to be filed
in the county where the client=s children previously resided rather than the county closer
to the client=s work and home.  Id.  The court upheld the Disciplinary
Administrator=s conclusion that the attorney violated Kansas Rule of Professional
Conduct  1.1 by failing to provide competent representation to a client.  Id.


4.         Contrary Authority

To controvert the precedential
holdings of other states, Grossman directs this court=s attention to Moncrief v. Harvey.
No. 05-90-01116-CV, 1991 WL 258684, at *2 (Tex. App.CDallas Nov. 26, 1991, writ denied)
(not designated for publication).  In Moncrief, the Fifth Court of
Appeals observed that venue is a pretrial matter referring to the geographical
location of a suit and signifying the county in which a plaintiff has the legal
right to institute and maintain an action.  Id.  The court noted that a
challenge to venue can be waived, and stated that the judgment debtors had
waived any venue complaints by appearing in the foreign state=s courts.  Id.  In sum, the
court rejected the judgment debtors= use of Texas law to challenge venue
in Dallas because the debtors did not originally use Wyoming law to challenge
venue in Wyoming.








But there is no reason to suppose
that the judgment debtors could have predicted the need to challenge Dallas
venue in the Wyoming court at the time the petition was originally filed.  And
under the reasoning employed in Moncrief, it is difficult to imagine how
the debtors could have preserved error.[6]  Moreover,
this reasoning has not been followed by any other court, nor do we find it
persuasive.  Waiver of a challenge to venue in another forum simply has no
bearing on whether the citizens of Texas should be denied the protections of
the venue laws enacted by their own legislature.  We therefore decline to
follow the holding of Moncrief.  

We find the reasoning in Munn v.
Mohler more persuasive.  251 S.W.2d 801 (Tex. Civ. App.CWaco 1952, no writ) (suit under the
Fair Labor Standards Act, 29 U.S.C.A. ' 201, et seq.).  As in this case,
the appellee in Munn argued that the AAct upon which his suit was based
authorize[d] him to maintain his action in any court of competent
jurisdiction and thereby supersede[d] the provisions of the state statutes relating
to venue . . . .@ Id. at 802(emphasis added). 
The Tenth Court of Appeals reasoned that, although the Act permitted an action Ain any court of >competent jurisdiction[,]=@ this meant that the claimant Awas thus authorized to select the
forum where he would institute and prosecute such action, either in the Federal
or State courts, [but] he was not thereby relieved of the duty to select a
court which could properly acquire jurisdiction over the person . . . sued, as
well as jurisdiction over the subject matter of his suit.@  Id. at 803.[7] 
Moreover, the court rejected the argument that Athe intended purpose of the Federal
Act was to supersede the provisions of any statute relating to venue of civil
actions or that the legal effect thereof was to deprive an inhabitant of Texas
of his right to be sued in the county of his
domicile . . . .@  Id.  To the contrary, the
court emphasized that:

The Texas courts have held repeatedly
and consistently that the legal right of a defendant to be sued in the county
of his residence is a valuable right of which he may not be deprived unless the
case filed against him comes clearly within one of the exceptions found in the
venue statute.  

Id.








Here, the UEFJA does not clearly
indicate the legislature=s intent to exempt the filing of a foreign judgment from the
general venue laws of Texas.  Like other states faced with interpretation of
the UEFJA, we therefore apply the general venue laws of the state in which the
foreign judgment is filed.[8]   

D.        Application of the General Venue Statute

Because Grossman failed to overcome
Cantu=s venue challenge by showing that
venue is proper in Harris County, the burden shifted to Cantu to show that
venue is proper in Hidalgo County.  Under the general venue statute, Aall lawsuits shall be brought . . . in
the county of defendant=s residence at the time the cause of action accrued if
defendant is a natural person.@  Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a)(2).[9]  In his
uncontested affidavit in support of his motion to transfer venue, Cantu stated,
AI have continuously resided in
Hidalgo County, Texas all of my life but for the dates I attended law school
many years ago. . . . All of my assets and business interests have been in and
are currently located in Hidalgo County, Texas.@  Although lack of surprise does not
form part of our analysis, we note that Grossman was aware that Cantu resided
in Hidalgo County at the time of the Florida lawsuit.  At that time, Grossman
sought service of  Cantu in McAllen in Hidalgo County, Texas, and in his
amended petition, Grossman stated that Cantu Awas and is an attorney maintaining an
office in or near McAllen, Texas.@  Thus, any delay in enforcement that
was caused by Grossman=s choice to file the judgment in Harris County does not
appear to be attributable to Cantu.  








We conclude that under section
15.002(a)(2) of the Civil Practice and Remedies Code, venue is proper in
Hidalgo, not Harris, County.  We therefore hold that the trial court erred in
denying Cantu=s motion to transfer venue to Hidalgo County.  Accordingly, we sustain
Cantu=s first issue, and we do not reach
his second issue.

IV.  Conclusion

Having held venue is proper in Hidalgo County, the
judgment of the trial court is reversed, and we remand with instructions to
transfer the cause to a court of competent jurisdiction in Hidalgo County.

 

 

 

 

/s/        Charles Seymore

Justice

 

 

Judgment rendered and Majority and
Dissenting Opinions filed January 29, 2008

 

Panel consists of Justices Frost,
Seymore, and Guzman. (Frost, J., dissenting).









[1]  The record does not indicate that Cantu appealed the
judgment awarding attorneys= fees and
costs.





[2]  See Tex. Civ. Prac. & Rem. Code Ann. '' 35.002, 35.003 (Vernon 1997).





[3]  The trial court=s
written order denying the motion to transfer venue is not part of the record on
appeal.  Grossman, however, concedes the trial court entered such an order.





[4]  A court of competent jurisdiction is one having
authority over the defendant, authority over the subject matter, and power to
enter the particular judgment rendered.  State v. Hall, 794 S.W.2d 916,
919 (Tex. App.CHouston [1st Dist.] 1990), aff=d, 829
S.W.2d 184 (Tex. Crim. App. 1992).





[5]  Grossman argues Cherwood is not persuasive
because the Georgia general venue provision is constitutionally, rather than
statutorily, based.  What is significant about Cherwood, however, is
that the Georgia court=s reasoning rests on the availability of a means for
defendants to attack the judgments.  Cherwood, Inc., 601 S.E.2d at 357. 
In Schwartz v. F.M.I. Props. Corp., this court similarly recognized the
federal constitutional requirement of providing a means for a judgment debtor
to challenge the judgment and observed the UEFJA could not be read as a pure
registration statute.  714 S.W.2d 97, 100 (Tex. App.CHouston [14th Dist.] 1986, writ ref=d n.r.e.). 





[6]  For example, if the judgment debtor was the
plaintiff in the original action but lost a counterclaim, the reasoning in Moncrief
would dictate the conclusion that, having chosen the original forum, the
debtor would be unable to preserve a challenge to any Texas venue.





[7]  Fair Labor Standards Act of 1938, 29 U.S.C.A. ' 216(b), 52 Stat. 1069; 75 Stat. 74 (AAn action to recover the liability
prescribed in either of the preceding sentences may be maintained against any
employer (including a public agency) in any Federal or State court of competent
jurisdiction by any one or more employees for and in behalf of himself or
themselves and other employees similarly situated.@), amended by Fair Labor Standards Amendments of 1974, Pub. L.
No. 93-259, sec. 6(d)(1), 88 Stat. 55 (which substituted Amaintained against any employer (including a public
agency) in any Federal or State court of competent jurisdiction@ for Amaintained in
any court of competent jurisdiction. . . .@).





[8]  Our dissenting colleague complains that this court Ashould not adopt a statutory interpretation of the
general venue statute that frustrates both the legislature=s desire for uniformity among states and the dominant
purpose of the Uniform Act.@  On the
contrary, our disposition is consistent with every State that has ruled on this
very question.  





[9]  The rule is subject to certain exceptions and
provisions not relevant here.